UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARLOS DANIEL BURGOS MARTINEZ, | CASE NO. C26-0231-KKE |
| Petitioner(s), | ORDER ON HABEAS PETITION |
| v. | |
| NORTHWEST IMMIGRATION AND CUSTOMS ENFORCEMENT PROCESSING CENTER,[1] | |
| Respondent(s). | |

Petitioner Carlos Daniel Burgos Martinez is an individual who is detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington on a charge that he is unlawfully

---

[1] In this case, Petitioner names as a respondent the detention center where he is held rather than the warden. The proper respondent for a habeas petition is the petitioner's immediate custodian or warden of the detention facility. *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). Under Federal Rule of Civil Procedure 21, the Court may, "on its own," and "on just terms, add … a party." Fed. R. Civ. P. 21. Here, although Petitioner fails to name his immediate custodian, the petition clearly challenges his detention at and seeks release from the NWIPC. Construing the petition liberally, as it must, the Court directs the Clerk to add Bruce Scott, Warden of the NWIPC, as a respondent in this action pursuant to Federal Rule of Civil Procedure 21. *See, e.g.*, *Urena v. Warden, Otay Mesa Det. Ctr.*, 26-CV-323-JO-DDL, 2026 WL 362082 (S.D. Cal. Feb. 9, 2026) (court *sua sponte* adding detention center warden as a respondent "[g]iven Petitioner's *pro se* status and his clear indication that he seeks release from the Otay Mesa Detention Center" and assuming jurisdiction over habeas action); *Bailey v. Fulwood*, 780 F. Supp. 2d 20, 25 (D.D.C. 2011) (court *sua sponte* adding prison warden as "the proper respondent" in habeas action under Rule 21); *Devilmar v. U.S. Immigration & Customs Enf't ICE*, 3:26-CV-0009-JES-MSB, 2026 WL 130387, at *1 (S.D. Cal. Jan. 16, 2026) (declining to dismiss habeas petition for want of jurisdiction where petitioner failed to name detention center warden as a respondent "[i]n light of Petitioner's pro status and the liberty interests at issue"); *Torres Munguia v. Attorney General*, 2:26-CV-1067-KG-GBW, 2026 WL 967363, at *1 n.1 (D.N.M. Apr. 9, 2026) (court *sua sponte* adding warden as the respondent and noting it "routinely substitutes" the "proper parties" as respondents in habeas actions under Rule 21). The Court notes that the Government did not raise the absence of Scott's name on the petition in its response.

ORDER ON HABEAS PETITION - 1

present in the United States without admission or parole.  Dkt. No. 27-3 at 3, Dkt. No. 27-5 at 2. Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, asserting that his arrest and re-detention violated his right to due process. Dkt. No. 22 at 6.  The briefing on Petitioner's habeas petition is now complete.  Dkt. Nos. 22, 25, 30.[2]  Because the Court finds that Petitioner has established that his continued detention without an additional bond hearing violates his right to due process, the Court will grant the habeas petition.  Dkt. No. 22.

## I.    BACKGROUND

Petitioner Carlos Daniel Burgos Martinez is a native and citizen of El Salvador who, on September 15, 2016, arrived in the United States at a port of entry in Laredo, Texas when he was 17 years old.  Dkt. No. 26 ¶ 3.  Upon arrival, Petitioner was detained by Customs and Border Protection ("CBP").  *Id.*, Dkt. Nos. 27-1, 27-2.  Petitioner stated that, having been assaulted by gang members there, he feared returning to El Salvador.  Dkt. No. 27-1 at 4.  A CBP agent completing Petitioner's I-213 form observed that Petitioner had bruising on his abdomen, which Petitioner stated he "acquired as a result of the beating." *Id.*  Petitioner was subsequently issued a Notice to Appear ("NTA") for removal proceedings under Section 240 of the Immigration and Nationality Act ("INA"), as well as forms I-862, I-200, and I-286.  Dkt. No. 27-1 at 4–5, Dkt. No. 27-2, Dkt. No. 27-4.  The NTA indicated that, at the time of its issuance, Petitioner was a juvenile. Dkt. No. 27-2 at 2.  An initial hearing was set for September 15, 2016, though from the record, it is unclear whether this proceeding took place as scheduled.  *See* Dkt. No. 27-2.

---

[2] In addition to filing a reply, Petitioner filed a motion requesting the Court accept as timely his "late-filed reply" in the event it was delivered to the Court past the noting date.  *See* Dkt. No. 29.  Under the "prison mailbox rule," a document may be construed as filed on the date it was submitted to prison authorities for mailing.  *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see Anthony v. Cambra*, 236 F. 3d 568, 575 (9th Cir. 2000) ("prison mailbox rule" applies to petitioners in federal habeas actions).  Because the record shows Petitioner mailed his reply on the noting date (*see* Dkt. No. 30 at 9), the Court construes his reply as timely-filed, and thus grants his motion.  Dkt. No. 29.

ORDER ON HABEAS PETITION - 2

On February 4, 2017, ICE Enforcement and Removal Operations ("ERO") in El Paso served Petitioner with an Order of Release on Recognizance ("OREC") using Form I-220A. Dkt. No. 27-3 at 4. Petitioner was released from ICE custody pursuant to the OREC pending an immigration hearing. *Id.* On February 13, 2017, an Immigration Judge ("IJ") granted Petitioner's motion for a change of venue to Los Angeles, California. *Id.* On June 13, 2017, Petitioner filed an application for asylum and withholding of removal. *Id.*

On January 19, 2023, ERO Los Angeles received information from the ICE attaché in El Salvador indicating that Petitioner was the subject of an outstanding arrest warrant issued by the Salvadoran government in 2020; the warrant alleged Petitioner to be a member of a "terrorist organization," namely, the MS-13. Dkt. No. 26 ¶ 10, Dkt. No. 27-9 at 3. On April 4, 2023, ERO Los Angeles arrested Petitioner in a targeted enforcement operation in Inglewood, California, and served Petitioner with a Notice of Custody Determination, Form I-286 (Dkt. No. 27-5 at 2) and a Warrant for Arrest of Alien, Form I-200 (Dkt. No. 27-4 at 2–3). Dkt. No. 27-3 at 4. The Notice of Custody Determination stated that Petitioner would be detained by the Department of Homeland Security ("DHS") "[p]ursuant to the authority contained in section 236" of the INA and pertinent regulations. Dkt. No. 27-5 at 2. On July 7, 2023, an IJ denied Petitioner's request for a "custody redetermination pursuant to 8 C.F.R. § 1236," citing the 2020 arrest warrant issued by the Salvadoran government as evidence of Petitioner being "a risk of flight." Dkt. No. 27-6 at 2.

On November 21, 2023, an IJ denied Petitioner's asylum and withholding of removal applications. Dkt. No. 27-7. The BIA summarily dismissed Petitioner's appeal of the IJ's decision denying asylum and withholding of removal because his then-attorney failed to timely file a supporting brief. Dkt. No. 27-8 at 2, Dkt. No. 22 at 5. Petitioner took an appeal from the BIA's decision to the Ninth Circuit, which remanded the case to the BIA "to ensure the administrative record is complete." *Burgos-Martinez v. Garland*, No. 24-3237, Dkt. No. 41 (9th Cir. Nov. 20,

ORDER ON HABEAS PETITION - 3

2024).  While his appeal was pending before the Ninth Circuit, Petitioner filed a motion for release on bond, which the Ninth Circuit denied.  *Id.*  In that order, the Ninth Circuit explained that it would not review Petitioner's request for a custody determination at that juncture, and that "eligible detainees may seek a bond hearing from an immigration judge, appeal to the [BIA], and then seek review of the determination by filing a habeas corpus petition in the district court[.]" *Id.* (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).[3]  Petitioner has a pending U visa application which is "based on [his] being the victim of an attempted homicide."  Dkt. No. 27-9 at 4; Dkt. No. 26 ¶ 14.

On August 11, 2025, Petitioner filed a bond redetermination request.  Dkt. No. 27-9 at 2. Petitioner submitted evidence which the immigration court found "established materially changed circumstances that warrant a new bond redetermination hearing." *Id.* at 3.  Specifically, Petitioner provided the immigration court with a Certificate of Criminal Record issued by the General Directorate of Penal Centers in El Salvador on May 5, 2023.  *Id.*  The document certified that, as of May 5, 2023, Petitioner had no criminal record in El Salvador, directly contradicting the 2020 warrant which alleged Petitioner was wanted for being part of a terrorist organization.  *Id.*  In light of the 2023 certificate, the IJ deemed the "2020 arrest warrant from El Salvador" to be "unpersuasive," "dubious," and "unreliable" for multiple reasons.  *Id.*  The IJ observed that the 2020 warrant contained no particularized facts about, or Unique Identifying Number ("UIN") for, Petitioner (despite containing UINs for eight other named individuals) and that "the stamps from the alleged certifying agency are illegible, which casts doubt on its authenticity." *Id.*  Owing to the new evidence, and finding that Petitioner did not otherwise pose a danger to the community, the IJ granted Petitioner's bond request and ordered Petitioner to be released on a $1,500 bond.

---

[3] In seeking habeas relief from the BIA order through this petition, Petitioner appears to have followed the guidance he received from the Ninth Circuit.

ORDER ON HABEAS PETITION - 4

Dkt. No. 27-9 at 4–5.  That order releasing Petitioner on bond is dated September 4, 2025.  *Id.* at 5.  DHS appealed the bond order.

On September 25, 2025, the IJ issued a Bond Memorandum ruling it lacked jurisdiction to redetermine Petitioner's custody due to "intervening [BIA] precedent," *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  Accordingly, Petitioner was not released pursuant to the earlier-issued bond order.  On December 11, 2025, the BIA sustained DHS's appeal and vacated the IJ's initial order granting Petitioner release on bond, citing *Hurtado* and finding Petitioner to be subject to mandatory detention under § 1225(b).  Dkt. No. 22-1 at 33–34.  Petitioner most recently appeared for a hearing related to his immigration status on March 13, 2026.  Dkt. No. 26 ¶¶ 14, 24.  His immigration proceedings are ongoing.

## II.   ANALYSIS

Petitioner asserts that the Government violated his right to due process under the Fifth Amendment by subjecting him to "prolonged and indefinite detention[] without the possibility of bond" and "without access to a bond hearing."  Dkt. No. 22 at 6; Dkt. No. 22-1 at 36–42.  He seeks release or, in the alternative, that the Court "grant appropriate relief" from such prolonged detention.  Dkt. No. 22-1 at 36.  The Government argues that as a noncitizen detained under 8 U.S.C. § 1225(b), Petitioner's continued detention without a bond hearing is constitutional.  Dkt. No. 25 at 7–8.  The Court considers as a threshold matter the statutory basis for his detention, then turns to the merits of his habeas petition.

**A.    Petitioner is Subject to Discretionary Detention Under 8 U.S.C. § 1226(a).**

The Government argues that ICE "lawfully detains Petitioner pursuant to 8 U.S.C. § 1225(b)(2) as an applicant for admission."  Dkt. No. 25 at 1, 5–7 (citing *Buenrostro-Mendez v. Bondi*, 166 F. 4th 494, 498 (5th Cir. 2026)).  Petitioner disputes that he is subject to mandatory detention, and urges the Court to adopt the IJ's initial finding that he is subject to discretionary

ORDER ON HABEAS PETITION - 5

detention under 8 U.S.C. § 1226(a).  Dkt. No. 22 at 2, 6; Dkt. No. 15 at 2.   For the reasons below, the Court agrees with Petitioner.

In general, "the default discretionary bond procedures in section 1226(a) apply to noncitizens who … are 'present in the United States without being admitted or paroled' under section 1182(a)(6)(A)" and are not subject to mandatory detention under another section of the INA.  *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1323 (W.D. Wash. 2025).  Even in cases where a petitioner is apprehended upon arrival, if he is "'treated by [the Government] as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply."  *Del Valle Castillo v. Wamsley*, No. 2:25-CV-2054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 281 (D. Mass. 2025)).

The record amply supports that the Government has treated Petitioner as subject to discretionary detention under § 1226 from his arrival in the United States in 2017 through the issuance of the September 2025 bond release order.  The Government's own exhibits and statement of facts support that Petitioner was detained pursuant to its discretionary authority under § 1226(a).  Both the Form I-200 Arrest Warrant and the Notice of Custody Determination issued to Petitioner in 2023 explicitly authorized his arrest and detention pursuant to "section 236 of the Immigration and Nationality Act"—i.e., § 1226.  Dkt. No. 27-5 at 2; Dkt. No. 27-4 at 2–3; *see Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 935–36 (N.D. Cal. 2025) (observing that arrest warrants using a Form I-200 are issued under § 1226).  Further supporting that § 1226—not § 1225—governs his detention, Petitioner was previously released pursuant to an OREC on Form I-220A.  Dkt. No. 27-3 at 4.  While the Government does not provide a copy of Petitioner's OREC, courts in this District and others have explained that an order of release on recognizance such as the one issued to Petitioner is a form of "conditional parole" from detention which is authorized under § 1226.  *See,*

*e.g.*, *Sanchez Henao v. Hernandez*, 2:26-cv-00707-LK, 2026 WL 905035, at \*4; *Valencia Zapata*, 801 F. Supp. at 936; *Ortega-Cervantes v. Gonzales*, 501 F. 3d 1111, 1115 (9th Cir. 2007) (explaining that "release on recognizance" is "another name for 'conditional parole' under § 1226(a)").

Additionally, in Petitioner's NTA, DHS indicated that Petitioner "has not been admitted or paroled[.]" Dkt. No. 27-2 at 2; *see Sanchez Henao*, 2026 WL 905035, at \*4 (the fact that petitioner was deemed not to have been admitted or paroled supported his detention was governed by § 1226 rather than § 1225). Further, the IJ considering Petitioner's 2025 custody re-determination request found Petitioner was subject to discretionary detention under § 1226. *See* Dkt. No. 27-9 at 2–3 (explaining that Petitioner's status as a minor upon his entry and his release on his own recognizance supported that his "detention and release has continually been governed by [section 1226(a)], and not [1226(b)]"). Finally, the Court judicially notices that, in a brief submitted to the Ninth Circuit on Petitioner's 2024 appeal, the Government acknowledged that Petitioner was detained pursuant to § 1226(a). Government's Response at 3 n.2, Burgos-Martinez v. Garland, No. 24-3237 (9th Cir. Oct. 25, 2024), Dkt. No. 36.

In sum, the entirety of the record makes clear that Petitioner's detention is governed by 8 U.S.C. § 1226 rather than § 1225. "[T]he government cannot switch tracks and subject Petitioner[] to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioner[] in removal proceedings … and released them on their own recognizance under section 1226(a)." *Valencia Zapata*, 801 F. Supp. 3d at 936. Having determined the statutory basis for Petitioner's detention, the Court turns to Petitioner's due process claim.

**B.      Petitioner Has Established a Due Process Violation.**

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28

U.S.C. § 2241(c)(3).  In this case, Petitioner contends that his detention without a bond hearing violates, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution (Dkt. No. 22 at 6), which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).   "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context."  53 F.4th 1189, 1206–07 (9th Cir. 2022).  There, the Ninth Circuit applied the *Mathews* test to evaluate whether due process required an additional bond hearing for a noncitizen detained under § 1226(a).  *Id.* at 1196.

The Court first discusses procedural requirements established under § 1226(a), considers whether Petitioner was afforded adequate process under § 1226(a), then considers each *Mathews* factor to determine whether Petitioner's re-detention comports with constitutional due process

ORDER ON HABEAS PETITION - 8

requirements. The Court notes that, having predicated its arguments on detention under § 1225(b), the Government did not brief the procedural requirements under § 1226(a) nor did it provide argument on the *Mathews* factors. *See* Dkt. No. 25.

1. The Government Violated § 1226(a)'s Procedural Requirements.

Petitioner challenges the Government's application of § 1225(b) to his detention, asserting it "constitutes a serious legal and constitutional error[.]" Dkt. No. 22 at 6; Dkt. No. 22-1 at 31–35. The Government insists that Petitioner is detained under § 1225(b), and thus, does not address § 1226(a)'s procedural requirements. Dkt. No. 25 at 7. For the reasons below, the Court finds that Petitioner has been deprived of the process due to him under § 1226(a) as well as pertinent federal regulations.

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes an initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following the initial custody determination, the noncitizen may request a bond hearing before an immigration judge, as Petitioner did in 2023. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

In making the bond determination, an IJ considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citation omitted). The noncitizen may submit evidence in support of his claims, and can appeal an adverse decision to the BIA. *See* 8 C.F.R. §§ 1003.19(b), 236.1(d)(3). Where there is a material change in circumstances, a noncitizen can request an additional bond hearing before an

ORDER ON HABEAS PETITION - 9

IJ, as Petitioner did after obtaining evidence showing he has no criminal record in El Salvador. *See* 8 C.F.R. § 1003.19(e); *see* Dkt. No. 27-9. Even after an IJ grants bond, the noncitizen's bond may nevertheless be revoked at any time. *Balwan v. Bondi*, 2:26-CV-00248-LK, 2026 WL 497098, at *5 (W.D. Wash. Feb. 23, 2026). "[H]owever, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance." *Id.* (citing *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018)).

Although Petitioner received a bond hearing and was initially granted release on bond, the subsequent IJ Bond Memorandum and BIA Order vacated the order of release, determined that Petitioner was subject to mandatory detention under § 1225(b), and divested the immigration court of jurisdiction to consider Petitioner's custody status. In other words, the procedures Petitioner initially received (and was entitled to) were rendered a nullity by the subsequent orders. Relying on the IJ Bond Memorandum and BIA Order sustaining DHS's appeal,[4] the Government insists that Petitioner is not entitled to another bond hearing (Dkt. No. 25 at 7). This position incorrectly assumes Petitioner's detention under § 1225(b), and thus violates Petitioner's statutory procedural rights under the INA, 8 U.S.C. § 1226(a), and its implementing regulations. The Court turns to the *Mathews* factors to consider whether Petitioner has established a due process claim under the Fifth Amendment.

2.  Petitioner Has a Protected Interest in His Liberty.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested and has remained in

---

[4] Both the IJ Bond Memorandum and the BIA Order cited *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) as the basis for finding that Petitioner was subject to mandatory detention under § 1225(b), and thus, was ineligible for release on bond. In *Rodriguez Vazquez*, the court declined to follow *Hurtado* and "declare[d] that the Tacoma Immigration Court's practice of denying bond … on the basis of § 1225(b)(2) violates the Immigration and Nationality Act." 802 F. Supp. at 1335–36. The Court finds the reasoning in *Rodriguez Vazquez* to be persuasive and incorporates it in this Order.

ORDER ON HABEAS PETITION - 10

custody for over three years undoubtedly presents a deprivation of Petitioner's interest in his liberty.

Here, after detaining Petitioner from his arrival in 2016 until February 2017, DHS released Petitioner on his own recognizance. Dkt. No. 26 ¶ 3, Dkt. No. 27-1, Dkt. No. 27-2, Dkt. No. 27-3 at 4. When DHS re-detained Petitioner in 2023, he had been living and working as a plumber in the United States; he also owned a small tee shirt business in Los Angeles. *See* Dkt. No. 15-1 at 33–38. Though Petitioner has now been detained for over three years, prior to his detention, he had spent six years in the United States released on an OREC. Petitioner's interest in his liberty is constitutionally protected. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Accordingly, the first *Mathews* factor favors Petitioner.

3. The Risk of Erroneous Deprivation of Liberty is High.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of an additional bond hearing.

In applying § 1225(b)'s mandatory detention scheme to Petitioner, the Government summarily deprived Petitioner of the opportunity to be released on bond after an IJ had ordered such release. "The risk of erroneous deprivation is extraordinarily high" where, as here, "ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner[] without any individualized showing of why their detention is warranted, nor any process for

ORDER ON HABEAS PETITION - 11

Petitioner[] to challenge the exercise of that discretion." *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at \*24 (D. Nev. Nov. 17, 2025).  In contrast, the bond hearing procedures available through § 1226(a)'s implementing regulations would render "the risk of erroneous deprivation … relatively small[.]"  *Rodriguez Diaz*, 53 F. 4th at 1210 (citation omitted).

Thus, this factor also weighs in favor of Petitioner.

4.   The Government's Interest in Civil Detention Without a Hearing is Low.

In the final *Mathews* factor, the Court considers the Government's interest in continuing to detain Petitioner without a hearing.  "[T]he Attorney General's discretion to detain individuals under [§ 1226(a)] is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community."  *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020) and *Zadvydas*, 533 U.S. at 690).  Petitioner has no criminal history in either the United States or El Salvador, and Respondents do not argue that he is a danger to the community, nor that he is a flight risk.  *See* Dkt. No. 25.  "And the government has no interest in the unjustified deprivation of a person's liberty."  *Escobar Salgado*, 809 F. Supp. at 1161 (observing that the Government's interests "are in fact served by the individualized determination by an immigration judge … as to whether an individual is dangerous or at risk of fleeing removal proceedings").  As such, the Government has failed to show a significant interest in Petitioner's continued detention without a bond hearing.

Based on this review of the *Mathews* factors, the Court finds that the Petitioner's liberty interest in his continuing release from custody is entitled to constitutional protections of due process.  In applying a blanket mandatory detention scheme to Petitioner despite having previously

ORDER ON HABEAS PETITION - 12

treated him as subject to discretionary detention, the Government has violated his constitutional rights.

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

### III.   REMEDY

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and "the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief is not limited "to the discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted," and "provides that '[t]he court shall … dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

Here, Petitioner "faces the specific harm of being deprived of his opportunity to be released on bond, pursuant to [the IJ's] order" for over seven months. *Escobar Salgado*, 809 F. Supp. 3d at 1162. "The Court finds this harm is remedied by his immediate release, subject to the bond conditions imposed by [the] IJ[.]" *Id.*; *see also Jacobo Ramirez v. Noem*, 2:25-CV-02136-RFB-MDC, 2025 WL 3270137, at *13 (D. Nev. Nov. 24, 2025) (finding that where petitioner was released "after a constitutionally adequate bond hearing," then re-detained after IJ rescinded bond based on *Hurtado*, the appropriate remedy was "immediate release, subject to the bond conditions" previously imposed by the IJ).

Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained. *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *9 (N.D. Cal. Dec. 18, 2025) ("If the government

ORDER ON HABEAS PETITION - 13

wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process.").

## IV.  CONCLUSION

For these reasons, the Court GRANTS the habeas petition.  Dkt. No. 22.  The Court ORDERS as follows:

1) Within ONE day of this order Respondents must release Petitioner Carlos Daniel Burgos Martinez on the terms of the September 4, 2025 order issued by Immigration Judge Anne Kristina Perry (Dkt. No. 27-9).

2) Petitioner shall not be re-detained, absent urgent circumstances, without pre-deprivation notice and an opportunity to be heard in front an Immigration Judge.

3) The Government shall file a declaration no later than THREE DAYS from the date of this order, documenting Petitioner's release in compliance with this order.

Dated this 5th day of May, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 14